**Slip Op. 03-163**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| SLATER STEELS CORP., FORT WAYNE SPECIALITY ALLOYS DIVISION; CARPENTER TECHNOLOGY CORP., CRUCIBLE SPECIALTY METALS DIVISION, CRUCIBLE MATERIALS CORP.; ELECTRALLOY CORP.; AND UNITED STEEL WORKERS OF AMERICA, AFL-CIO/CLC, | |
| Plaintiffs, | Court No. 02-00289 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| UGINE-SAVOIE IMPHY, S.A., | |
| Defendant-Intervenor | |

[Judgment for defendant.]

Date: December 16, 2003

Mary T. Staley (Collier, Shannon & Scott, PLCC) for plaintiffs Slater Steels Corp., Fort Wayne Specialty Alloys Division; Carpenter Technology Corp., Crucible Specialty Metals Division; Crucible Materials Corp.; Electralloy Corp.; United States Steel Workers of America, AFL-CIO/CLC.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (James H. Holl, III and Stephen Tosini) for defendant United States.

Thomas Bernard Wilner (Shearman & Sterling) for defendant-
intervenor Ugine-Savoie Imphy, S.A.


**GOLDBERG, Senior Judge:**  Plaintiffs challenge certain aspects of
the final determination of the U.S. Department of Commerce
("Commerce") in an antidumping investigation covering stainless
steel bar from France.  Notice of Final Determination of Sales at
Less Than Fair Value; Stainless Steel Bar from France, 67 Fed.
Reg. 3143 (Jan. 23, 2002) ("Final Determination").

For the reasons that follow, the Court affirms the Final
Determination.  The Court has jurisdiction over this matter
pursuant to 28 U.S.C. § 1581(i).

## I.  BACKGROUND

On December 28, 2000, domestic producers Slater Steels
Corp., Fort Wayne Specialty Alloys Division; Carpenter Technology
Corp., Crucible Specialty Metals Division;  Crucible Materials
Corp.; Electralloy Corp.; United States Steel Workers of America,
AFL-CIO/CLC (collectively, "plaintiffs") filed a petition with
Commerce requesting that antidumping duties be imposed on
stainless steel bar imports from France and Italy, among other
countries.  Commerce commenced an investigation against importers
from France and Italy on January 24, 2001.

On January 23, 2002, Commerce issued the Final Determination
in which it found that stainless steel bar was being sold in the

United States at less-than-fair value.

## II. <u>STANDARD OF REVIEW</u>

The Court will sustain Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).  To determine whether Commerce's construction of the statutes is in accordance with law, the Court looks to <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  Under <u>Chevron</u>, it is only if the Court concludes that "Congress either had no intent on the matter, or that Congress's purpose and intent regarding the matter is ultimately unclear," that the Court will defer to Commerce's construction under <u>Chevron</u>.  <u>Timex V.I., Inc. v. United States</u>, 157 F.3d 879, 881 (Fed. Cir. 1998). In addition, "[s]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under <u>Chevron</u>." <u>Pesquera Mares Australes Ltda. v. United States</u>, 266 F.3d 1372, 1382 (Fed. Cir. 2001) (interpreting <u>United States v. Mead</u>, 533 U.S. 218 (2001)).  Accordingly, the Court is not to substitute "its own construction of a statutory provision for a reasonable interpretation made by [Commerce]."  <u>IPSCO, Inc. v. United States</u>, 965 F.2d 1056, 1061 (Fed. Cir. 1992).

## III. <u>DISCUSSION</u>

## A.   Commerce did not Err in Treating Ugine and its Italian subsidiary as a Single Entity

Plaintiffs argue that Commerce's refusal to consolidate the data from defendant-intervenor Ugine-Savoie Imphy, S.A. ("Ugine") and its Italian subsidiary Trafilerie Bedini, Srl ("Bedini") when determining "normal value" for calculating Ugine's dumping margin is contrary to law.  Plaintiffs claim that not consolidating the data across country lines allowed Ugine and Bedini to manipulate the results of the antidumping investigation.  Plaintiffs cite Tune Mung Dev. Co. v. United States, 26 CIT __, Slip Op. 02-93 (Aug. 22, 2002) to support their position, which stated that "Commerce has a duty to avoid the evasion of antidumping duties."

Commerce and Ugine correctly argue that consolidating Ugine and Bedini's data across country lines is forbidden in antidumping duty investigations by statute.  Except for specific enumerated exceptions to the rule, consolidating investigations and data across country lines for antidumping duty investigations is prohibited.

The dumping margin is the amount that the normal value of the foreign like product subject to the antidumping proceeding exceeds the export price of the subject merchandise.  19 U.S.C. § 1673.  The foreign like product is restricted, under any of its definitions in 19 U.S.C. § 1677(16), to identical or similar merchandise that is produced in the same country as the subject merchandise.  Congress reinforces its restriction on combining

data across country lines in its definition of normal value.
"Normal value" is defined in 19 U.S.C. § 1677b(a)(1)(B) as home
market sales of the foreign like product, third country sales of
the foreign like product, or constructed value of the subject
merchandise.  Under any of these definitions, both the "foreign
like product" and the "subject merchandise" must be in the same
country as the merchandise that is the subject of the
investigation.

Congress has further defined a country in antidumping duty
proceedings to be "a foreign country, a political subdivision,
dependent territory, or possession of a foreign country."  This
definition does not allow for more than two foreign countries to
be counted as one, especially in the instance of antidumping duty
proceedings.  19 U.S.C. § 1677(3).  In fact, the statute that
defines "country" allows that the term "country" may "include an
association of 2 or more foreign countries, political
subdivisions, dependent territories, or possessions of countries
into a customs union outside the United States," "except for the
purposes of antidumping proceedings."  Id.  Congress intended to
preclude collapsing data and conducting investigations across
country lines in antidumping duty proceedings.  Therefore,
Commerce did not err in refusing to collapse the data of Ugine
and Bedini across country lines.  Because the statute prohibits
collapsing the data or the proceedings, Commerce was not

unreasonable in its decision not to collapse the data even though there was a risk of price or production manipulation by the affiliated French and Italian companies.  <u>See</u> 19 CFR § 351.401(f) (two or more affiliated producers shall be treated as one entity "where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and . . . there is a significant potential for the manipulation of price or production").

B.    <u>Commerce's decision to accept Ugine's revised data was reasonable.</u>

Commerce issued questionnaires to two French stainless steel bar producers, including Ugine.  Ugine submitted its responses to questionnaires and responses to supplemental questionnaires. After issuing its preliminary determination, which found that Ugine was selling at less-than-fair value, Commerce conducted verification of Ugine's questionnaire responses.  At the start of verification, Ugine provided Commerce with a list of errors to its previously-submitted home market sales data.  At verification, Commerce found that: (1) prior home market sales databases failed to include home market sales of two finish codes; (2) prior home market sales databases failed to report certain resales made by Ugine's service centers; (3) prior home market sales databases incorrectly includes stainless steel bar

produced in another country; and (4) prior home market sales databases had failed to provide the proper grade code for a number of the service center's sales.  Upon request by Commerce, Ugine submitted revised home market sales reflecting the aforementioned corrections.  Subsequently, Commerce conducted a public hearing, where Ugine's revised submissions were discussed.

Plaintiffs argue that Ugine's revised data, submitted after the submission deadline, was necessary for verification and constituted a "substantial change" to the original data provided. Commerce thereby acted in violation of 19 U.S.C. § 1677e(a) by not calculating the antidumping margin using facts available.[1] Plaintiffs do not argue for the application of adverse facts available under 19 U.S.C. § 1677e(b).

Commerce responds that its decision not to apply facts available is supported by substantial evidence and is otherwise in accordance with law.  Commerce claims that Ugine acted to the best of its ability to comply with all of the agency's requests for information before and after verification.  Additionally,

---

[1]     Section 1677e(a) provides that:

[I]n general, Commerce may make its determinations on the basis of facts available if:
 (1) necessary information is not available on the record, or
 (2) an interested party or any other person—
  (B) fails to provide such information by the deadlines

19 U.S.C. § 1677e(a)

Commerce claims Ugine's revisions were minor and verifiable, and produced usable data. Thus, Commerce was within its discretion to use the data provided by Ugine.

In order to be in accordance with law, Commerce's actions must be reasonable under the terms of the relevant statute. Maui Pineapple Co., Ltd. v. United States, 27 CIT __, __, 264 F. Supp. 2d 1244, 1256 (Apr. 16, 2003) (internal citation omitted). In Maui Pineapple, the court affirmed Commerce's acceptance of untimely information supplied by the respondent instead of applying facts available. The court stated that:

> Commerce enjoys very broad, although not unlimited discretion with regard to the propriety of its use of facts available. Commerce also has broad discretion to fashion its own rules of administrative procedure, including the authority to establish and enforce time limits concerning the submission of written information and data. Further, Commerce's determination as to whether a respondent has complied with its request for information is discretionary. 27 CIT __, __, 264 F. Supp. 2d 1244, 1257 (internal citations omitted).

Likewise, in the instant case, Commerce determined that Ugine acted to the best of its ability to comply with all of the agency's requests for information. In addition, Commerce found that Ugine promptly notified Commerce of errors in its reported home market database, that these errors were minor, and that the revisions were verifiable and produced usable data. See Tung Mung Dev. Co. v. United States, 25 CIT __, Slip Op. 01-83 (July 3, 2001) (finding that Commerce's application of combination

rates in light of the respondents' apparent lack of cooperation was a proper exercise of its discretionary authority to find the appropriate measures to execute the antidumping laws). Section 1677(e)(a) does not require Commerce to reject data submissions that are untimely, but rather provides that timeliness may serve as a criterion that Commerce may consider when deciding whether to apply facts available. See 19 U.S.C. § 1677e(a)(2)(B). The statute also allows Commerce to consider the respondent's level of cooperation in making the determination whether to apply facts available. See 19 U.S.C. § 1677e(a)(2)(C). Commerce, not the Court, is in the best position to assess these criteria and to make the appropriate determinations. Here, Commerce was in the best position to determine whether Ugine's data submissions were verifiable and whether the submissions produced usable data. Likewise, Commerce was in the best position to assess the respondent's level of cooperation and the effect of the respondent's timeliness or lack thereof. The Court will affirm Commerce's determination "if it finds that a reasonable mind could extract the same conclusion from all of the evidence represented in the record." Persico Pizzamiglio, S.A. v. United States, 18 CIT 299, 303 (1994) (citing Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1077, 699 F. Supp. 938, 942 (1988)). Commerce's determination that Ugine acted to the best of its ability and produced usable data is reasonable. Accordingly, the

Court affirms Commerce's decision to use the revised data submitted by Ugine instead of applying facts available.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, the Court finds that Commerce's <u>Final Determination</u> is supported by substantial evidence and is in accordance with law and accordingly the <u>Final Determination</u> is sustained.

Judgment will be entered accordingly.

 

**Richard W. Goldberg**
**Senior Judge**

**Date:      December 16, 2003**
**           New York, New York**

**ERRATUM**

<u>Slater Steels Corp., Fort Wayne Speciality Alloys Division, et al. v. United States</u>, Court No. 02-00289, Slip Op. 03-163, issued December 16, 2003.

• On page 2, the second sentence of the second paragraph should read: "The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c)."